STEVEN F. GRUEL (CSBA 213148)
655 Montgomery Street, Suite 1700
San Francisco, California 94122
Telephone Number (415) 989-1253

RANDY MONTESANO (CSBA 83842)
214 Duboce Avenue
San Francisco, California 94103
Telephone Number (415) 431-8226

Attorneys for Anthony Gar Lau

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-06-0192-CRB |
| ) | |
| Plaintiff, ) | ANTHONY LAU'S REPLY TO THE |
| ) | GOVERNMENT'S OPPOSITION TO |
| vs. ) | SUPPRESS EVIDENCE FROM THE |
| ) | ILLEGAL SEARCH OF 308 GOODWIN |
| ANTHONY GAR LAU, ) | DRIVE |
| ) | |
| Defendant. ) | Honorable Charles R. Breyer |
| ) | |
| ) | Hearing Date:  October 25, 2006 |
| ) | |

Defendant Anthony Gar Lau, by and through his attorneys, hereby submits ANTHONY LAU'S REPLY TO THE GOVERNMENT'S OPPOSITION TO SUPPRESS EVIDENCE FROM THE ILLEGAL SEARCH OF 308 GOODWIN DRIVE.

### I.  STATEMENT OF FACTS

On March 23, 2006, the government filed a 121 count indictment against Anthony Gar Lau alleging that he engaged in a conspiracy to harbor illegal aliens, that he harbored illegal aliens

and that he committed money laundering. Pursuant to Special Agent Jeff Rhea's June 29, 2005, master affidavit to support searches of 29 locations, law enforcement searched 3 locations associated with Mr. Lau: (1) a massage parlor called the Golden Flower (GF); (2) a business called the Wharf Coffee Shop; and (3) Mr. Lau's home located at 308 Goodwin Drive, San Bruno.

Mr. Lau moved this Court to suppress the search of his home. The government opposes the motion to suppress claiming that the master affidavit provides sufficient probable cause to conduct the search of Mr. Lau's home or, in the alternative, that the *Leon* "good faith" exception saves this otherwise impermissible search. The government is wrong on both points.

## II. ARGUMENT

### A. THE GOVERNMENT CONCEDES OVERREACHING IN THIS CASE

The government has admitted that it engaged in overreaching in this case. The June 23, 2005 indictment (repeatedly referenced in the government's opposition as somehow supporting probable cause for the search of Mr. Lau's home) charged 29 defendants and was ballyhooed as the dismantling of a smuggling operation. No less than 400 law enforcement officers participated in this Herculean effort. *See United States Attorney's* Press Release attached hereto as Exhibit A.

Yet, as this Court knows, with the passage of time, the government has dismissed all charges against several of the defendants in this case, dropped counts against some defendants, and agreed to lenient sentences such as "time served" for others. This back pedaling provides insight into an official recognition of it's over charging in this case. Also, as recently reported in the *San Francisco Chronicle*, apparently 7 of the massages parlors raided in this case are back in business.

As with the government's broad charging decision (where some defendants were outright dismissed), the same fatal overreaching is also evident in the search warrant master affidavit.

Upon review of the master affidavit's alleged "probable cause" to search Mr. Lau's home it is clear that the government fell well short of probable cause. Consequently, the defense respectfully requests that the items seized from Mr. Lau's home be suppressed and deemed inadmissible as trial evidence.

### B. NO FACTS CONNECTING ANY CRIME TO MR. LAU'S HOME

A total of 29 locations were searched in this case. Agent Rhea's master affidavit is 89 pages in length and contains 338 single spaced paragraphs with 108 footnotes. [The master search warrant affidavit was previously filed with the Court]. This robust quantity camouflages, until fully analyzed, the obvious lack of quality (i.e. facts to support probable cause) to search Mr. Lau's home.

Indeed, the government's "facts" to search Mr. Lau's home are outlined in a mere 6 paragraphs. *See* paragraphs 144-149. The government's investigative work, as reported in these 6 paragraphs, concludes that Mr. Lau lives at 308 Goodwin Drive in San Bruno. That's it! Notwithstanding secretly watching Mr. Lau at his home on three occasions (May 3, 2005; February 24, 2005; September 12, 2003) all that is determined is that he is seen driving to and from the Golden Flower. Significantly, in this investigation of an alleged large scale alien smuggling operation, Mr. Lau is never seen driving women (or anyone for that matter) to or from the Golden Flower or the Wharf Coffee Shop to his home. Mr. Lau is never observed carrying anything to or from his house that is connected to any criminal activity, much less the crimes pertaining to the government's large scale investigation. No alleged co-conspirators were ever seen at 308 Goodwin Drive.

Additionally, none of the government's confidential sources, some who allegedly have known Mr. Lau for years, say anything that remotely suggests Mr. Lau keeps anything or anyone associated with the Golden Flower, alien smuggling or prostitution at his home. Also, none of the government's 28,000 intercepted telephone calls from the wiretaps in this case are believed

to be made from or to Mr. Lau while at his home.  Simply stated, there is no evidentiary nexus whatsoever that connects any crime to Mr. Lau's home.

### C.  THE GOVERNMENT'S EFFORTS TO SAVE THE IMPROPER SEARCH.

While the prosecution correctly points to the Illinois v. Gates, 462 U.S. 213 (1983) test of "totality of the circumstances" in evaluating probable cause for a search warrant,  it incorrectly believes that the woeful lack of facts in this case satisfy that standard to legally raid Mr. Lau's home.   Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at  238.  Evidence that is obtained in violation of this Fourth Amendment stricture is subject to the exclusionary rule and is not permitted to be used at trial.  Mapp  v. Ohio, 367 U.S. 643 (1961).  As seen below, the totality of the circumstances clearly show the unquestionable lack of probable cause to search Mr. Lau's home.

**1. The Government's Improper Comment Regarding Items Found**

First, in an effort to save the flawed search, the prosecution's opposition inappropriately mentions to this Court that the search of Mr. Lau's home resulted in cash, sexual lubricants and business records.  It is wholly improper to look beyond the "four corners" of agent Rhea's affidavit to belatedly add facts to justify this bad search.  Nowhere within the 4th Amendment and the exclusionary rule is there a provision for an "ends justify the means" rationale for improper searches.  If the government's  suggested approach was followed, the 4th Amendment protections would be rendered meaningless.

**2. The Government's  Irrelevant Information**

Much of the government's opposition to Mr. Lau's motion to suppress refers to the evidence against other people such as Young Joon Yang and the results of searches of  different locations, such as Kings Massage parlor, that are not associated with Mr. Lau.  While interesting to read, this information concerning other people and other places is irrelevant when determining probable cause (or, as here, the lack thereof) to search Mr. Lau's home.   The prosecution falls

into their own trap created with the dangerous use of a master affidavit for a large number of searches with a large number of targets --- **they forgot that specific probable cause is required for each independent location.**   That specific showing simply did not occur with respect to Mr. Lau's home.

### 3. The Government's Reliance of Agent Rhea's Lack of Experience

The prosecution's opposition points to agent Rhea's experience as establishing probable cause.  With all due respect to agent Rhea, his limited experience is not enough to hurdle the complete lack of investigative facts connecting any crime to Mr. Lau's home so as to support finding probable cause.   Agent Rhea had been a special agent for only three years at the time of the warrant.  See paragraph 1 Rhea's master affidavit.  Next, it is unclear how much of his limited 3 years as an agent has been served in the Human Smuggling Group – Rhea only says he is "currently" in that unit. Also, we are left to guess what role (case agent/ assistant, etc.) he played in these vague cases or, for that matter, the exact nature of the types of cases he has worked on.

Significantly, agent Rhea's experience does not include training, teaching or testifying with respect to alien smuggling cases or the crimes investigated in this case.  Agent Rhea has never been designated or even considered as an expert in the areas of alien smuggling or human trafficking.

### 4. The Government's Mistaken  Reliance on Cell Phone Subscriber Information

Lost among the overwhelming number of over 28,000 intercepted calls in this case, the prosecution relies on a mere 3 calls to justify the search Mr. Lau's home.  Significantly, the content of these few calls have nothing to do with any alleged criminal activity involving, taking place in, or connected to Mr. Lau's home.

To the contrary, one intercepted conversation (paragraph 128) allegedly involved some unknown woman who discussed women with another. The other 2 calls allegedly involved Mr.

*ANTHONY LAU'S REPLY TO THE  GOVERNMENT'S*
*OPPOSITION TO SUPPRESS EVIDENCE FROM*
*THE ILLEGAL SEARCH OF 308 GOODWIN DRIVE*

Lau discussing the selling of condoms to be picked up at the **Wharf Coffee Shop**. Nothing in these 3 calls refers to, involves, takes place in or leads to 308 Goodwin Drive. The simple fact that the subscriber information is listed as 308 Goodwin Drive, considered in the absence of any other facts, is meaningless. Indeed, this reliance on subscriber information is further weakened when one considers that: (1) Mr. Lau has owned 308 Goodwin Drive since September 2002; (2) the government, as purported in the master affidavit, has investigated Mr. Lau for several years; and (3) during that long period of time, no criminal nexus has ever involved, lead to, connected with or been observed that begins to establish a probable cause showing to search Mr. Lau's home. The "totality of the circumstances," in short, completely weigh against searching 308 Goodwin Drive.

### D. *LEON* GOOD FAITH IS NOT APPLICALBE ON THESE FACTS

It is no oversight that the government fails to apply the facts of this case to the United States v. Leon, 468 U.S. 897 (1984) "good faith"exception to the exclusionary rule. Instead, the prosecution merely refers to the case and, as with a magic wand, expects this Court to "deny the motion" because of alleged "good faith." Again, the government is wrong.

The government bears the burden of proving that reliance upon an invalid warrant was objectively reasonable. United States v. Kow, 58 F3d 423, (9th Cir. 1995). A warrant so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable may be suppressed even when the warrant is facially valid and there is no evidence of bad faith or a biased magistrate. Leon at 923; quoting Brown v. Illinois, 422 U.S. 590 (1975).

Probable cause that a suspect committed a crime does not automatically generate probable cause to search a suspect's home. United States v. Valenzuela, 596 F2d 824, (9th Cir. 1979). The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that specific "things" to be searched for and seized are located on the property. Zurcher v. Stanford, 436 U.S. 547 (1978). Before permitting a

*ANTHONY LAU'S REPLY TO THE GOVERNMENT'S*
*OPPOSITION TO SUPPRESS EVIDENCE FROM*
*THE ILLEGAL SEARCH OF 308 GOODWIN DRIVE*

search of a residence, a magistrate judge must therefore conclude that a "reasonable nexus" exists between the evidence sought and the residence. United States v. Chavez-Miranda, 306 F3d 973, (9th Cir. 2002).

In Kow, notwithstanding the government's claim of "good faith," the Ninth Circuit affirmed Judge Lynch's suppression of a warrant that was so overbroad that agents could not reasonably rely on it. Indeed, the "good faith" exception does automatically apply even if materials might reasonably be found in as suspect's home. United States v. Gourde, 382 F3d 1003, (9th Cir. 2004)(no fair probability that incriminating material would be found in the suspect's house and a search would be in bad faith); United States v. Hove, 848 F2d 139-40, (9th Cir. 1988)(no good faith were no connection between particular location to the suspect rendering official belief in the validity of the warrant unreasonable).

The same reasoning is true here. The 308 Goodwin Drive search is so lacking in indicia of probable cause that it renders official belief in its existence entirely unreasonable. The good faith exception does not apply to save the 308 Goodwin drive search.

**E.   THE NECESSITY OF A *FRANKS* HEARING**

The Lau defense is developing the showing for a hearing in accordance with Franks v. Delaware, 438 U.S. 154 ( 1978).   Under Franks, the Court must suppress evidence upon a showing that false statements were knowingly or recklessly included in, or material omission kept from, the search affidavit.

In this case, the Lau defense has filed a motion to suppress the wiretap evidence, based in part, upon the misrepresentations made with respect to the necessity requirement for the wiretap. Not only will the suppression of the wiretap evidence buttress the motion with respect to the Mr. Lau's home, but other new facts are relevant for a Franks hearing.

1. <u>Law Enforcement Were "Customers" At the Golden Flower</u>

According to the prosecution's witness reports, individuals employed in law enforcement were "customers" at the Golden Flower. The Lau defense is investigating these government reports to determine what impact this shocking information has on agent Rhea's representations, and/or omissions, from his master affidavit.

2. <u>Other Omitted Facts Showing No Nexus to 308 Goodwin</u>.

One informant in the master affidavit reported to the FBI that she worked at the Golden Flower and other places since 1995. Another reported that she worked at the Golden Flower since 2002. Nothing, however, is mentioned in the master affidavit from these informants, who have known Mr. Lau for extended periods of time, whether he kept women, records, travel documents or anything related to the alleged crimes at his residence. Certainly none of them report that *they* ever stayed at Mr. Lau's home. These material omissions, and others, further dilute the prosecution's already razor thin claim of a nexus to Mr. Lau's home.

3. <u>Agent Rhea's Omissions</u>

Finally, the defense has requested from the prosecution, and has been denied, detailed information of agent Rhea's background. If the prosecution expects to rely on agent Rhea's experience to leap over the 4th Amendment, the defense is entitled to know the specific omissions that were hidden from Magistrate Judge Vadis.

Additionally, agent Rhea's generally claims to have reviewed telephone toll records and financial records to support his conclusions regarding probable cause predicated on his "experience." (Rhea's paragraph 3). Missing from his master affidavit, however, are Rhea's results of this review, if they exist, that are relevant to relying on the cell phone subscriber information as a gateway around the 4th Amendment and into Mr. Lau's home.

*ANTHONY LAU'S REPLY TO THE  GOVERNMENT'S*
*OPPOSITION TO SUPPRESS EVIDENCE FROM*
*THE ILLEGAL SEARCH OF 308 GOODWIN DRIVE*

- 8

### III. **CONCLUSION**

Clearly, this prosecution is laden with government overreaching. While the prosecution can, and has, corrected its mistakes in the charging decisions in this case, only the Court can remedy the Constitutional error made in searching Mr. Lau's home. The Court should suppress the search at Mr. Lau's home.

            Respectfully Submitted,

Dated: October 16, 2006   /s/ _____
              STEVEN F. GRUEL
              RANDY MONTESANO
              Attorneys for Anthony Gar Lau